**UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

IN RE:

VITO C. MAROTTA,
    DEBTOR

Chapter 13
Case No. 07-15660-WCH

**MEMORANDUM OF DECISION REGARDING OBJECTION OF BAYVIEW LOAN SERVICING, LLC TO CHAPTER 13 PLAN AND OBJECTION OF DEBTOR TO CLAIM OF BAYVIEW LOAN SERVICING, LLC**

I.  Introduction

    Bayview Loan Servicing LLC ("Bayview") filed an objection to the Chapter 13 plan (the "Plan") of Vito C. Marotta (the "Debtor") on the grounds that the Debtor incorrectly listed the amount of Bayview's claim for arrearages.  In his response, the Debtor contested many of the charges which comprised those higher arrearages.  The Debtor also filed an objection to Bayview's claim, again contesting the charges.  After considering the matters and affording the parties an opportunity to brief the issues, I took the matters under advisement.  As set forth below, the objections to the Plan and claim are sustained, in part, and overruled, in part.  The following constitutes my findings of fact and conclusions of law.

II.  Background

    The Debtor filed for relief on September 7, 2007.  In Schedule A, the Debtor listed a tenancy by the entirety interest in a home in Marstons Mills, MA (the "Property").  He disclosed

that the Property had a fair market value of $320,000 subject to a secured claim of $131,761.70. In Schedule C, the Debtor claimed an exemption in the Property of $188,238.30 under Mass. Gen. Laws ch. 188, § 1. In Schedule D, the Debtor listed Bayview as the holder of the secured claim. In Schedule F, he listed unsecured claims of $4,430. Through the Plan, the Debtor proposed to pay $13,850 to "Bayview Loan Servicing/East-West Mtg." for the pre-petition arrearages on the first mortgage.[1] He also explained that unsecured creditors would receive 0%. In his Statement of Financial Affairs, the Debtor checked the box for "none" when asked about any pending suits within one year preceding his bankruptcy case to which the Debtor was a party.[2]

Bayview filed an objection to the Plan in which it provided the factual underpinnings for its claim. It explained that in October, 2005, 1-800-East-West Mortgage through its nominee, Mortgage Electronic Registration Systems, Inc., loaned the Debtor $110,000 in exchange for a promissory note (the "Note") secured by a mortgage (the "Mortgage") on the Debtor's property located at 28 Hamblins Hayway in Barnstable, Massachusetts (the "Property").[3] Bayview represented that its was the servicing agent for "Wachovia Bank, NA as Trustee f/k/a First Union National Bank for Bayview Series 2002-D."[4] Bayview asserted that the Debtor undervalued

---

[1] In Schedule D, the Debtor listed no other secured creditors.

[2] Question 4(a) of the Statement of Financial Affairs requires a debtor to list "all suits and administrative proceedings to which the debtor is or was a party within one year immediately preceding the filing of this bankruptcy case."

[3] These documents are attached to Bayview's pleadings described herein and the parties do not appear to challenge their authenticity. The Note is titled Adjustable Rate Note. It provides, *inter alia*, for an initial interest rate of 8% and initial monthly payments of $807.14.

[4] Bayview makes no representations about the chain of title.

Bayview's claim because the Debtor owed it $7,000 more for the arrearages on the Note based upon a breakdown it attached to its pleading. Bayview attached copies of the Note, Mortgage and a Statement of Pre-Petition Arrears to its objection.

Bayview prepared the Statement of Pre-Petition Arrears on October 23, 2007. In it, Bayview claimed that the unpaid principal balance of the Note was $109,001.19. It further claimed that the Debtor owed $11,616.57 for monthly payments of $1,290.73 from January to September of 2007 and late fees of $193.68 for that same time period. The difference between the $11,810.25 and the total amount Bayview asserted it was due was for the following additional fees:

| | |
|---|---|
| Deferred Late Charges Balance | $48.42 |
| Securing Fees/BPO Fees: | $75.00 |
| Interest Arrearages: | $0.00 |
| Current NSF Balance: | $0.00 |
| Inspection Fees: | $10.00 |
| Escrow Advance: | $3,415.98 |
| Bankruptcy & Foreclosure Attorney Fees and Costs: | $5,359 |
| Other costs: | $0.00 |

In the Debtor's response to Bayview's objection, the Debtor argued that Bayview lacked standing or was not a secured creditor as it did not offer evidence that it was the holder of the Note and Mortgage.[5] Further, the Debtor asserted that the monthly payments which Bayview listed in its objection were higher that those set forth in the Note. The Debtor also argued that the payments could not include an escrow amount as escrow advances were a separate line item and that the "amount calculated" could not include both interest and principal as principal was

---

[5] In support, the Debtor cited to *In re Foreclosure Cases*, 2007 WL 3232420 (N.D. Ohio October 31, 2007).

3

set forth in a separate entry. The Debtor sought further information regarding the entries for "Escrow Advance" and "Bankruptcy and Foreclosure Attorney Fees and Costs."

Bayview then filed an amended objection in which it identified itself as the moving party and represented that the original mortgagee had assigned both the Note and the Mortgage to Bayview in an assignment that was effective April 1, 2007.[6] The Assignment included "the money due and to become due thereon with interest." Bayview did not address the Debtor's objections to certain fees but did attach the Note, Mortgage, Assignment and the same statement of pre-petition arrears.

The Debtor filed a response to the amended objection to confirmation. Notwithstanding the entry in the Debtor's Statement of Financial Affairs wherein the Debtor claimed he was not a party to a suit or administrative proceeding within one year preceding the bankruptcy filing, the Debtor disclosed in this pleading that Bayview had initiated foreclosure proceedings against the Debtor in April, 2007.[7] The status of that proceeding remains a mystery.

The Debtor's first argument in response to Bayview's objection to his Plan was that Bayview lacks standing because the Assignment was never recorded. In support, the Debtor

---

[6]Bayview attached as Exhibit C the Assignment of the Mortgage (the "Assignment"). The assignor is Mortgage Electronic Registration Systems, Inc. As nominee for 1-800-East-West Mortgage Company, Inc. and the assignee is Bayview. In the entry for "dated" is typed August 13, 2007. Next to that date is the handwritten entry: "effective as of April 1, 2007." There is no indication as to who wrote those words and when. Based upon an entry at the top of the page, it appears that the Assignment was recorded on December 14, 2007.

[7]That Bayview commenced its foreclosure in April, 2007 is consistent with the attorneys' fees itemization described in the entries on page 6 for its breakdown of fees wherein it describes incurring fees on April 25, 2007 for "Filings Costs - Filing Fee Complaint."

cited to one case from Massachusetts and again to the district court case from Ohio.[8] Even if the Assignment were recorded, the Debtor claimed that it cannot be liable for the attorneys' fees and other fees incurred under the Note when Bayview had no rights under the Note. Lastly, with respect to the Assignment, the Debtor argued that the Assignment only assigns the Note and not the Mortgage, thereby rendering Bayview an unsecured creditor.

The Debtor's second argument is that even if the Assignment were valid, the fees which Bayview seeks are incorrect. The Debtor argued that Bayview did not provide a breakdown for its attorneys' fees. The Debtor again asserted his objection to the inconsistency in the payments, the charges for escrow, and the failure to differentiate between the principal and interest payments. The Debtor requested that I dismiss Bayview's claim in its entirety or declare the claim unsecured or, in the alternative, order Bayview to provide more information.

Bayview filed an opposition to the Debtor's response to its amended objection to confirmation of the Plan. Bayview explained that it recorded the Assignment on December 14, 2007 and that the Assignment was effective as of April 1, 2007. Bayview asserted that because in Massachusetts an assignment need not be recorded or executed prior to a foreclosure, by extension, the Assignment need not have been recorded or executed prior to the Debtor's bankruptcy filing. The Ohio case upon which the Debtor relies is inapplicable, Bayview explained, because it is neither on point nor controlling.

With respect to the Debtor's objections to certain fees, Bayview addressed two. First, with respect to attorneys' fees, Bayview attached a copy of its correspondence to the Debtor

---

[8]*See Ellis v. Sullivan*, 241 Mass 60, 134 N.E. 695 (1922) and *In re Foreclosure Cases*, 2007 WL 3232420 (N.D. Ohio October 31, 2007).

dated December 19, 2007 where in it provided the following breakdown of those fees:

| | | |
|---|---|---|
| 04/23/07 | Advances Costs - Tax Lien Certificate | $ 30.00 |
| 04/25/07 | Filing Costs - Filing Fee Complaint | $ 255.00 |
| 04/26/07 | Title Costs - Preliminary Title Search | $ 300.00 |
| 05/22/07 | Recording Costs - NOD/Intent to Foreclose | $ 100.00 |
| 06/06/07 | Title Costs - Later Date/Update Title Search | $ 150.00 |
| 06/08/07 | Service Costs - Sheriff Process | $ 120.00 |
| 06/12/07 | Service Costs - Publication (Order of Notice) | $ 305.00 |
| 06/28/07 | Service Costs - Statutory Mailing | $ 15.00 |
| 06/28/07 | Recording Costs - Loan Assignments | $ 100.00 |
| 06/28/07 | Service Costs - Skip Trace | $ 15.00 |
| 08/16/07 | Title Costs - Later Date/Update Title Search | $ 150.00 |
| 08/16/07 | Statutory Mailing | $ 45.00 |
| 08/30/07 | Barnstable Patriot - Sale Costs - Sale Publication | $ 999.00 |
| 09/10/07 | Sale Costs - Auctioneer | $1,275.00 |
| | Foreclosure Fees | $1,500.00 |
| | TOTAL: | $5,359.00 |

Second, with respect to the Debtor's argument regarding improper billing for escrow, Bayview explained that the entry of "Monthly Payments" for 11,616.57 included the nine months during which the Debtor had defaulted pre-petition. Those monthly payments were to have been $1,290.73 which was comprised of $807.14 for principal and interest, the amount set forth in the Note, plus an escrow payment of $483.59. Bayview then explained that the entry for "Escrow Advance" for $3,415.98 represented the $7,768.29 that Bayview had advanced the Debtor pre-petition for taxes and insurance minus the nine months of $483.59 it had accounted for in the entry of "Monthly Payments."

At the same time I was considering the matter outlined above, I ordered the Debtor to file an objection to the proof of claim Bayview had filed (the "Claim").[9] In this objection, the

---

[9]Initially, Bayview filed its claim as servicing agent. It later filed an amended claim, the Claim, on its own behalf and withdrew the claim it had previously filed. Bayview listed the Claim in the amount of $129,719.84 and described it as secured, based on the Mortgage. Where asked to provide the "arrearage and other charges at time case filed" it listed a claim of

6

Debtor addressed his objections to the breakdown Bayview had offered with respect to its attorneys' fees. The Debtor objected to the fact that Bayview incurred $600 for three title searches over four months without explanation and without supporting documentation. The Debtor asserted that Bayview cannot charge $100 for a foreclosure recording fee as the fee is $75.00. The Debtor argued that $30 for a tax lien certificate was incorrect as such fees are $25.00. The Debtor objected to the entry for $45 for mailing without explanation. The Debtor argued the most egregious fee was the charge for $100 for recording a loan as Bayview did not record the assignment until December, 2007. The Debtor opposed the escrow amount as too excessive given the actual amounts owed for insurance and taxes.[10] The Debtor again objected to rolling the missed principal payments to the principal of the loan. The Debtor argued that the entry for $1,500 for foreclosure fees was too vague. The Debtor again asked that the Claim be dismissed or that Bayview provide more supporting documentation.[11]

The last pleading filed with respect to these matters was Bayview's supplemental objection. With respect to the recording fee of $100 for the foreclosure, Bayview explained that while the recording fee is, in fact, $75, it also had to pay the recordation charge of the title company. With respect to the tax lien certificate, Bayview claimed that it obtained two for a total charge of $50 but only charged the Debtor $30. Bayview agreed that the assignment fee

---

$20,718.65. Attached to the Claim, Bayview provided restatement figures, the Note, Mortgage and Assignment.

[10]The Debtor asserted that the annual real estate tax bill she appended to her objection reflected that her annual bill was $2,251.

[11]It is interesting to note that while the Debtor sought to have the Claim denied in its entirety, the Debtor only objected to portions of the amount Bayview sought for arrearages. Other than his argument about the Assignment, the Debtor never objected to the amount Bayview listed for the unpaid principal.

7

was not incurred pre-petition but asks that the amount be recognized as a valid cost associated with the Note post-petition. With respect to the title search fees, Bayview conceded that only the initial search and one other were performed pre-petition and the charge should be $450. With respect to the mailing cost, Bayview asserts that $45.00 is an average cost but the actual cost was, in fact, $20.84. Bayview seeks to amend the claim to reflect this amount. Bayview did not provide a breakdown of the entry for "Foreclosure Fees" which Bayview valued at $1,500.

With respect to the amount for escrow advance, Bayview asserted that when it started to service the loan, there was a negative escrow balance of $5,817.39. That amount, Bayview explained, is comprised of the following:

| | | |
|---|---|---|
| July, 2006 | Tax payment | $1,218.77 |
| December, 2006 | Tax payment | $1,398.27 |
| January, 2007 | Tax payment | $ 592.35 |
| December, 2006 | Insurance Premium | $2,608.00 |

Additionally, contended Bayview, it had to make the following payments:

| | | |
|---|---|---|
| April, 2007 | taxes | $ 474.10 |
| July, 2007 | taxes | $ 562.80 |
| July, 2007 | insurance premium | $1,363.00 |
| July, 2007 | insurance premium | $ 340.00 |
| August, 2007 | insurance premium | $ 340.00 |

Bayview explained that deducted from this total amount is $1,131.00 for an insurance premium refund. The total would be $7,766.29.

III. Analysis

   A. Burden of Proof

The only assertion from either party regarding the applicable burden of proof in this case is found in the Debtor's objection to the Claim. The Debtor contends that the Bayview bears the burden of establishing the propriety of its fees and providing documentation pursuant to 11

8

U.S.C. § 362(g). That section addresses hearings on relief from stay and does not apply to the matters addressed in this memorandum.

One of the two matters before the Court is an objection to a proof of claim. The Federal Rules of Bankruptcy Procedure provide that a "proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim." Fed. R. Bankr. P. 3001(f). "The interposition of an objection does not deprive the proof of claim of presumptive validity unless the objection is supported by substantial evidence . . . . Once the trustee manages the initial burden of producing substantial evidence, however, the ultimate risk of nonpersuasion as to the allowability of the claim resides with the party asserting the claim." *Juniper Dev. Group v. Kahn (In re Hemingway Transp. Inc.)*, 993 F.2d 915, 925 (1st Cir. 1993), *cert. denied,* 510 U.S. 914 (1993).

A debtor generally bears the burden of demonstrating that a Chapter 13 plan should be confirmed. *See e.g. Beard v. Davidson (In re Beard),* 84 F.3d 431 (5th Cir. 1996) (holding objecting party bears initial production burden, debtor bears burden of persuasion), *Tillman v. Lombard (In re Lombard)*, 156 B.R. 156, 158-9 (E.D. Va. 1993) (ruling interpostion of objection does not shift burden of debtor to establish entitlement to confirmation), *Alexander v. Hardeman (In re Alexander),* 363 B.R. 917, 921-22 ( B.A.P. 10th Cir. 2007) (indicating the debtor must produce some affirmative evidence of good faith); *Sullivan v. Solimini (In re Sullivan)*, 326 B.R. 204, 211 ( B.A.P. 1st Cir. 2005) (ruling debtor bears burden under §1325(a)(3)); *In re Woodman*, 287 B.R. 589, 593 (Bankr. D. Me. 2003) ("A strong majority of courts appropriately allocate to the debtor the burden of proving the conditions for confirmation in §§ 1322 and 1325(a)"); *But see In re Coleman*, 373 B.R. 907, 911(Bankr. W.D. Mo. 2007), *In re Gatlin*, 357 B.R. 519, 521-

22 (Bankr. W.D. Ark. 2006), *In re Mendenhall*, 54 B.R. 44, 46-7 (Bankr. D. Ark. 1985) (holding confirmation process differs from civil litigation and objecting party bears burden of persuasion).

In this case, Bayview attached to its objection to the Plan and its Claim, copies of the Note, Mortgage, Assignment and the figures for reinstatement. Ultimately, it also provided a breakdown for the "Bankruptcy & Foreclosure Attorney Fees and Costs." While Bayview does not make this clear, its objection to the Plan is that the Plan does not properly provide for the curing of its arrearages and therefore does not satisfy 11 U.S.C. §§ 1325(b)(3) and 1325(a). Certainly the Claim is prima facie evidence of the validity and amount of the claim and even if the initial burden were on Bayview with respect to its objection to the Plan, it has met that burden. I must now address the Debtor's objections.

B. The Assignment

Initially, the Debtor argued that Bayview lacked standing because the Assignment had not been recorded.[12] In support, the Debtor first relied on *Ellis v. Sullivan,*[13] a case in which the Supreme Judicial Court of Massachusetts had to consider the issues of an agreement to modify interest on the note secured by mortgages, whether compound interest was warranted under the circumstances and whether rights of dower remained. The case does not stand for the proposition that an assignment is not valid until recorded.

In the second case upon which the Debtor relies, *In re Foreclosure Cases*,[14] the United

---

[12]In her objection to the Claim, the Debtor did not raise the issue of the Assignment. Perhaps it is because the issue had been raised in earlier pleadings or the Debtor recognized the validity of the Assignment. In the event that the Debtor has not waived the issue, I will address the matter.

[13]*Ellis v. Sullivan*, 241 Mass 60, 134 N.E. 695 (1922).

[14]*In re Foreclosure Cases*, 2007 WL 3232420 (N.D. Ohio October 31, 2007).

10

States District Court for the Northern District of Ohio dismissed the cases without prejudice as the foreclosing lender failed to comply with an order that it provide evidence that it was the holder and owner of notes and mortgages at the time it filed its complaints. In considering the assignments which the lender proffered, the district court looked to the laws of Ohio which, it explained, require that an assignment be recorded before the assignee would be entitled to receive a distribution.

In fact, in Massachusetts, an assignment need not be recorded in order to be valid. *See, e.g. MacFarlane v. Thompson*, 241 Mass 486, 135 N.E. 869 (1922). The Debtor does not dispute the validity of the assignment itself, simply that it was not recorded. At a minimum, the assignment was effective as of August 13, 2007. The Debtor's objection to the handwritten entry addresses only the lack of recording.[15] Accordingly, I will overrule that part of the Debtor's response to Bayview's objection to Plan that disputed the validity of the Assignment.

B. The Fees

In the Plan, the Debtor proposed to pay Bayview $13,850 for its claims for arrearages. He contends that Bayview's claim for $20,718 for arrearages is incorrect for three reasons. First, the Bayview cannot seek an amount for escrowed taxes and insurance twice. To evidence this practice, the Debtor directs the Court to the entry for "Escrow Advance" and Bayview's representation that the entry for "Unpaid Principal Balance" included charges for escrow. The Debtor also provided a copy of the town tax bill which reflects a tax bill much lower than the charges Bayview incurred for payment of those taxes. In demonstrating that Bayview is

---

[15]The Debtor did not argue that the handwritten notation placed next to the typed effective date was invalid per se. As such, I will not address the issue.

attempting to charge the Debtor twice for one expense, the burden has now shifted to Bayview. Unfortunately, Bayview offered two different explanations for the charges. It first explained that the "Unpaid Principal Balance" included charges for nine months of escrow and the "Escrow Advance" was for an unidentified earlier advance. It later argued that total amount of its escrow claim was for the amount of the claim it assumed at the time of the assignment and the bills it had paid since then. This explanation did not correspond with the earlier explanation. Bayview failed to adequately explain the discrepancy in its charges for escrow and, as such, I will overrule Bayview's objection and sustain the Debtor's with respect to those charges. I will reduce from Bayview's claim the amount for "Escrow Advance" ($3,415.98) and that part of the "Unpaid Principal Balance" that Bayview claimed was for escrow ("$7,264.26).

The Debtor's second complaint is that the remaining amount under "Unpaid Principal Balance" are charges for nine months of unpaid principal and interest. The Debtor agrees that he should pay the interest on those nine months but claims that he should not be charged for principal as during those nine months the amount of the principal was not reduced. Bayview did not address this argument. The Debtor offered no support for why the arrearages should not include the payments which he missed. I will not deduct these payments from Bayview's claim.

Lastly, the Debtor argues that the charges for "Bankruptcy & Foreclosure Attorney Fees and Costs" should be denied as Bayview included charges that were too high and/or unsubstantiated. Bayview adequately explained the charges for "Advances Costs", the title searches and the "Recording Costs." Bayview voluntarily reduced the charge for "Statutory Mailing" to $20.84. Bayview is not entitled to one of the charges for title searches and the charge for recording and assignment. These three charges total $274.00.

12

With respect to the "Foreclosure Fees," the Debtor simply contends that those fees are unexplained. Bayview did not address this entry. The Debtor offered no substantive grounds why this charge was erroneous. In fact, the Debtor failed to list the foreclosure in his Statement of Financial Affairs although he was required to do so. In his pleadings, the Debtor does not offer any details regarding the foreclosure such as what its status was at the time the Debtor filed for relief. As such, the Debtor's objection to this entry does not rebut the presumption that Bayview enjoys on its claim or meet the burden the Debtor holds with respect to his Plan. I will not deduct for this charge.

To sum up the foregoing, I will enter an order reducing from Bayview's claim for arrearages of $20,718 the charges for the unexplained duplicative escrow (4 x $807.14 or $7,264.26 and $3,415.98) and the charges listed above for $274. Accordingly, Bayview is entitled to the amount it claims for unpaid principal plus arrearages in the amount of $9,763.76.

IV. Conclusion

Bayview objected to the Plan on the grounds that it did not address the true amount of its claim for arrearages. Having determined that the amount that Bayview is owed for arrearages is less than the amount Bayview claimed, the Court sustains the objection on grounds separate from those offered. That is, the amount of the arrearages in the Plan is incorrect and the Court will enter a separate order requiring the Debtor to amend the Plan to provide the correct amount for arrearages. The Court will overrule the Debtor's response/objection to Bayview's objection to the Plan with respect to the matter of the assignment. The Court will enter an order sustaining the Debtor's objection to Bayview's claim insofar as the amount of the arrearages is incorrect. The Court will not dismiss the Claim in its entirety.

                                                 /s/ William C. Hillman

                                                 William C. Hillman
                                                 U.S. Bankruptcy Judge

Dated: March 25, 2008

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**EASTERN DIVISION**

IN RE:

VITO C. MAROTTA,
    DEBTOR

Chapter 13
Case No. 07-15660-WCH

_____

**ORDER ON OBJECTION OF BAYVIEW LOAN SERVICING, LLC TO CHAPTER 13 PLAN AND OBJECTION OF DEBTOR TO CLAIM OF BAYVIEW LOAN SERVICING, LLC**

    For the reasons set forth in the memorandum of decision of even date, the Court sustains Bayview's objection to the Debtor's Chapter 13 plan on grounds separate from those offered and the Debtor is ordered to amend his Chapter 13 plan to conform to the ruling. The Court overrules the Debtor's response/objection to Bayview's objection to the Plan with respect to the matter of the assignment. The Court sustains the Debtor's objection to Bayview's claim only insofar as the amount of the arrearages is incorrect. The Court will not dismiss the Claim in its entirety.

William C. Hillman
U.S. Bankruptcy Judge

Dated: March 25, 2008